UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| SINO-FOREIGN XINGSHENG GLOBAL INVESTMENT CONSULTING (HK) CO., LTD. | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| RIVERWALK FUND I, LLC, | ) ) |
| Defendant. | ) ) ) |

# COMPLAINT

## Introduction

1.      Plaintiff Sino-Foreign Xingsheng Global Investment Consulting (HK) Co., Limited ("Sino-Foreign") brings this action for damages resulting from Defendant Riverwalk Fund I, LLC's ("Riverwalk") breach of a written contract under which Riverwalk agreed to pay Sino-Foreign certain fees, in annual installments, for each investor Sino-Foreign referred to Riverwalk as part of the federal government's EB-5 Immigrant Investor Program (the "EB-5 Program").  Sino-Foreign has fully performed under the parties' agreement, but Riverwalk has failed and refused to pay the fees due and owing to Sino-Foreign under the contract.

## Parties

2.      Plaintiff Sino-Foreign Xingsheng Global Investment Consulting (HK) Co., Limited (now known as Sino-Foreign XingSheng (Limited) ("Sino-Foreign") is a company organized under the laws of the Hong Kong Special Administrative Region of the People's Republic of China with a principal place of business located at Room 609, Building A, Xinyu

Commercial Building, No. 90, Guanqumennei Ave, Chongwen District, Beijing 100062, P.R. China.

3. Defendant Riverwalk Fund I, LLC ("Riverwalk Fund I") is, upon information and belief, a limited liability company organized under the laws of the State of New Hampshire with a principal place of business located at 438 NH Route 49, Campton, Grafton County, New Hampshire 03223.

## Jurisdiction and Venue

4. The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(2) because there is complete diversity of citizenship between the parties and the amount in dispute exceeds $75,000.00.

5. The Court has personal jurisdiction over Riverwalk because it is, upon information and belief, a New Hampshire limited liability company, transacts business in New Hampshire and committed acts giving rise to the claims herein in New Hampshire.

6. Venue is proper under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in New Hampshire.

## Facts

7. Congress created the EB-5 Immigrant Investor Program in 1990 to stimulate the United States economy through job creation and capital investment by foreign investors. The EB-5 program is currently the only visa program designed to allow foreign investors to gain permanent residence (a "green card") in the United States. It requires a minimum investment of $1 million, or $500,000, if the investment is in a rural or targeted high unemployment area. To qualify for the EB-5 Program, immigrants can invest directly in a job-creating business or can invest through regional centers approved by the United States Citizenship and Immigration Service to promote economic growth in designated areas. If the investor's initial application is

approved, the investor can apply for conditional residence in the United States.  Once approved, the conditional residence lasts two (2) years.  After two years, the investor can apply to have the conditions removed and have the conditional resident made permanent, but only if the investment has resulted in the creation of a minimum of 10 jobs.

8. Upon information and belief, on August 2, 2010, Ms. Kelly M. Wieser founded Invest New Hampshire Regional Center, LLC ("INHRC") as a New Hampshire limited liability company with a principal place of business at 438 NH Route 49, Campton, New Hampshire 03222.

9. On or about July 29, 2011, Ms. Wieser, as the Applicant, submitted a Form I-924 to the USCIS to establish and designate INHRC as an EB-5 Program participant to organize and manage a job creating project located at Owl's Nest Resort and Golf Club in the White Mountains of New Hampshire.

10. On October 7, 2013, the USCIS issued an approval to INHRC, permitting twenty-one (21) immigrant investors (each referenced here as an "EB-5 Investor") each contributing $500,000.  A true and accurate copy of the USCIS's Oct 7, 2013 approval to INHRC is attached hereto as **Exhibit 1**.

11. Thereafter, in an "EB-5 Comprehensive Business Plan" submitted by INHRC to the USCIS for Form I-526 (the "EB-5 Business Plan"), Riverwalk is identified as a new commercial enterprise (the "NCE") for the purpose of raising EB-5 investment capital for a different project known as Riverwalk at Loon Mountain (the "Project").  A true and accurate copy of the EB-5 Business Plan for the Project is attached as **Exhibit 2**.

12. On or about April 2, 2014, INHRC and Riverwalk entered into a Business Affiliate Agreement (the "Affiliate Agreement"). A true and accurate copy of the Affiliate Agreement is attached hereto as **Exhibit 3.**

13. According to the Affiliate Agreement, Riverwalk became a Business Affiliate of INHRC to present the Project's EB-5 investment opportunities to potential EB-5 Investors. In return, INHRC would charge Riverwalk Fund I the following fees:

   a. $30,000 as the Initial Business Affiliate Fees;
   b. one percent (1%) per annum of the outstanding loan made by Riverwalk to the Project;
   c. $12,500 per EB-5 Investor brought by Riverwalk to the Project, as INHRC's EB-5 Investor Administrative Fees; and
   d. a yearly compliance fee up to $100,000 depending on amount the EB-5 Investor funds received by the Project under the Affiliate Agreement.

14. On or around May 2015, the General Manager of Sino-Foreign, Miss Qinqin "Annie" Xu, met Mr. Malone, Manager of Riverwalk, in Beijing, China for purpose of recruiting Chinese EB-5 Investors for the Project. Mr. Malone represented that Riverwalk was an authorized Business Affiliate of INHRC with the right to recruit EB-5 investors for the Project under the Affiliate Agreement with INHRC.

15. On or about July 20, 2015, Sino-Foreign entered into a bilingual EB-5-Compliant US Projects Agency Agreement ("Agency Agreement") with Riverwalk in both English and simplified Chinese. A true and accurate copy of the Agency Agreement is attached hereto as **Exhibit 4**.

16. According to the terms in English under the Agency Agreement, for each EB-5 investor Sino-Foreign referred to Riverwalk (collectively, the "EB-5 Investors"), Riverwalk agreed to pay an amount equal to one and one-half percent (1.5%) per annum of each EB-5 Investor's $500,000 loan amount wired to Riverwalk Fund I's Master Escrow account (the "Loan

Amount") for three (3) to five (5) years from the date Riverwalk received the investor's initial investment and until the investor's I-829 was approved and their investment fund is repaid. Furthermore, the Agency Agreement sets forth that this percentage fee payment to Sino-Foreign will become due and payable at the end of each anniversary of the date of the Initial Payment into the Riverwalk Fund Master Escrow Account. (See **Exhibit 4** at ¶ 3.1).

17. The Agency Agreement further provides that "[t]he formation, interpretation, performance, settlement of disputes of this Agreement shall be governed and construed by the laws of the State of New Hampshire, USA." *Id*. At ¶ 9.

18. Unbeknownst to Riverwalk and Sino-Foreign at the inception of the Agency Agreement, the Chinese translation of the terms of the Agreement was inconsistent with the terms set forth in English. Notably, the Chinese-translated terms stated that payment to Sino-Foreign is calculated at the rate of $15,000 per annual per EB-5 Investor (that is, three percent (3%) per annum of each EB-5 Investor's Loan Amount) to Riverwalk Fund I, while the English term stated the rate should be at 1.5%.

19. To rectify the annual rate discrepancy for payments owed by Riverwalk up to June 2017, Ms. Wieser, on behalf of INHRC and Riverwalk, emailed Miss Xu of Sino-Foreign in June 2017 to account and list payments owed to Sino-Foreign. A true and accurate copy of Ms. Wieser's June 10, 2017 email is attached as **Exhibit 5**.

20. To completely rectify the annual rate discrepancy under the Agency Agreement, on July 10, 2017, Ms. Wieser, on behalf of INHRC and Riverwalk, prepared and emailed Miss Xu and Mr. Malone on behalf of Riverwalk, a draft of the First Amendment to the Agency Agreement (the "First Amendment"). A true and accurate copy of Mrs. Wieser's July 10, 2017 email is attached as **Exhibit 6**.

21. On July 10, 2017, Sino-Foreign and Riverwalk executed the First Amendment, which indicated the payments to Sino-Foreign (the "Percentage Fee" or the "Percentage Fee Payment") should be calculated at the rate of three percent (3%) per annum of each Investor's Loan Amount to Riverwalk. A true and accurate copy of the executed First Amendment is attached as **Exhibit 7**.

22. The First Amendment was later repetitively executed by Beijing Sino-Foreign Xingsheng Orient Co. Ltd. (an affiliate of Sino-Foreign) and Riverwalk on December 29, 2019, with no modification whatsoever except for the date of execution as compared to the First Amendment executed on July 10, 2017. A true and accurate copy of the 2019 repetitively executed First Amendment is attached as **Exhibit 8**.

23. The First Amendment stated that the Percentage Fee Payments would be payable one year from the day that is two weeks after the notice date on an EB-5 Investor's I-797C noticing USCIS's receipt of that EB-5 Investor's I-526 application ('Start Date"), until that EB-5 Investor receives the final adjudication of his/her I-829 and all funds invested by the Qualified Investor and loaned to Riverwalk have been repaid. (See **Exhibit 8**).

24. During the term of the Agency Agreement, as amended, Sino-Foreign introduced a total of eight (8) EB-5 Investors to Riverwalk, each paying a $500,0000 Loan Amount to Riverwalk. These EB-5 Investors respectively are: Yanghong Dou, Min Zhao, Tan Qiu, Churao Wen, Lan Cen, Yangning Wang, Yuhua Wen, and Jiali Sun. The I-526 immigration petitions for each of these eight (8) EB-5 Investors were submitted between 2015 to 2016, all identifying INHRC as the EB-5 Regional Center concerned. According to Percentage Fee Payment under the First Amendment, these eight (8) EB-5 Investors would accumulate a total of $120,000 in

Percentage Fee Payments per year payable by Riverwalk to Sino-Foreign, before any of these EB-5 Investors exit the Project and receive their respective repayment of the Loan Amount.

25.  Beginning April 18, 2015, Riverwalk started to remit the Percentage Fee Payments as obligated under the Agency Agreement and the First Amendment to Sino-Foreign.

26.  Ms. Wieser, on behalf of INHRC and Riverwalk Fund I, continued to be the lead person corresponding with Ms. Xu of Sino-Foreign regarding Percentage Fee Payment approval and remittance to Sino-Foreign according to the First Amendment.  A true and accurate copy of Ms. Wieser's December 24, 2019 to May 5, 2020 emails to Ms. Xu are attached as **Exhibit 9**.

27.  After the Percentage Fee Payments referenced in Ms. Wieser's May 5, 2020 email were wired, Riverwalk stopped making any payments that were due for the period ending May 30, 2020 and forward.  The details of Percentage Fee Payments due and outstanding as of the date of this Complaint are as follows:

   a. EB-5 Investor Yanghong Dou: for the period beginning April 1, 2020 to March, 31, 2024, Riverwalk has failed to remit annual installment payments in any amount. As such, Riverwalk owes Sino-Foreign approximately $60,000 for four missed annual installment payments.

   b. EB-5 Investor Min Zhao: for the period beginning June 1, 2019 to May, 31, 2023, Riverwalk has failed to remit annual installment payments in any amount. As such, Riverwalk owes Sino-Foreign $60,000 for four missed annual installment payments.

   c. EB-5 Investor Tan Qiu: for the period beginning June 1, 2019 to May, 31, 2023, Riverwalk has failed to remit annual installment payments in any amount. As such, Riverwalk owes Sino-Foreign $60,000 for four missed annual installment payments.

   d. EB-5 Investor Churao Wen: for the period beginning September 1, 2019 to August 31, 2023, Riverwalk has failed to remit annual installment payments in any amount. As such, Riverwalk owes Sino-Foreign a total of $60,000 for four missed annual installment payments.

e. <u>EB-5 Investor Lan Cen</u>: According to information provided by Riverwalk, Lan Cen exited the Project and received her $500,000 investment repayment in the end of 2021 or early 2022. Hence, for the period beginning October 1, 2019 to September 30, 2021, Riverwalk has failed to remit annual installment payments in any amount. As such, Riverwalk owes Sino-Foreign a total of $30,000 for two missed annual installment payments.

f. <u>EB-5 Investor Yangning Wang</u>: for the period beginning October 1, 2019 to September 30, 2023, Riverwalk has failed to remit annual installment payments in any amount. As such, Riverwalk owes Sino-Foreign a total of $60,000 for four missed annual installment payments.

g. <u>EB-5 Investor Yuhua Wen</u>: According to information provided by Riverwalk, Yuhua Wen exited the Project and received her $500,000 investment repayment in the end of 2021 or early 2022. Hence, for the period beginning October 1, 2019 to September 30, 2021, Riverwalk has failed to remit annual installment payments in any amount. As such, Riverwalk owes Sino-Foreign a total of $30,000 for two missed annual installment payments.

h. <u>EB-5 Investor Jiali Sun</u>: for the period beginning April 1, 2020 to March 31, 2024, Riverwalk has failed to remit annual installment payments in any amount. As such, Riverwalk owes Sino-Foreign a total of $60,000 for four missed annual installment payments.

28. After EB-5 Investor Lan Cen and Yuhua Wen's exit of the Project and receipt of their respective Loan Amounts in the end of 2021 or early 2022, the Percentage Fee Payment accumulation respective to these two (2) EB-5 Investors stopped according to the terms of the First Amendment. The remaining six (6) EB-5 Investors continue to accumulate Percentage Fee Payments payable by Riverwalk to Sino-Foreign at a rate of $90,000 per year before any of them exits the Project and receives their respective Loan Amount repayment.

29. Under the Agency Agreement, as amended, Riverwalk remains obligated to pay Sino-Foreign Percentage Fee Payments until the last EB-5 Investor receives the final adjudication of his/her I-829 and all funds invested by the Investor and loaned to Riverwalk I have been repaid.

30. Upon information and belief, Lan Cen and Yuhua Wen, as two (2) of the eight (8) EB-5 Investors Sino-Foreign brought to Riverwalk, exited the Project and each received their respective refunds of $500,000 Loan Amount sometime in the end of 2021 or early 2022. There are still six (6) EB-5 Investors remaining on the Project.

31. As of the date of this Complaint, Riverwalk owes Sino-Foreign in excess of $400,000 in Percentage Fee Payments under the Agency Agreement and the First Amendment excluding any pre or post judgment interest. In addition, Percentage Fee Payments continue to accrue under the Agency Agreement, as amended.

32. Despite repeated demands from Sino-Foreign and its counsel for overdue Percentage Fee Payments, Riverwalk has failed and/or refused to remit the Percentage Fee Payments described in the Agency Agreement, as amended.

33. All conditions precedent have transpired or occurred.

## COUNT I
### (Breach of Contract)

34. Sino-Foreign repeats, realleges, and incorporates by reference all of the foregoing paragraphs as if fully set forth herein.

35. At all relevant and material times, Sino-Foreign satisfied its contractual obligations owed to Riverwalk.

36. Sino-Foreign presented eight (8) EB-5 Investors pursuant to the terms of the Agency Agreement, as amended, to Riverwalk.

37. Riverwalk has committed a material breach of the Agency Agreement, as amended, through its failure to remit Percentage Fee Payments described herein.

38. As a direct and proximate result of Riverwalk's failures, Sino-Foreign has suffered damages in an amount to be determined at trial plus the judgment or prejudgment

interest which shall continue to accrue until the final adjudication of the matters concerned herein.

## COUNT II
**(Breach of the Implied Covenant of Good Faith and Fair Dealing)**

39. Sino-Foreign repeats, realleges, and incorporates by reference all of the foregoing paragraphs as if fully set forth herein.

40. Contained in every contract executed in the State of New Hampshire is an implied covenant of good faith and fair dealing.

41. By and through its actions or failure to act, described above, Riverwalk has breached the implied covenant of good faith and fair dealing.

42. Specifically, by failing to satisfy its contractual obligations set forth in the underlying Agency Agreement, as amended, and failure to remit Percentage Fee Payments described herein, Riverwalk breached the covenant of good faith and fair dealing which was implied in its contractual obligations with Sino-Foreign.

43. As a direct and proximate result of Riverwalk's failures, Sino-Foreign has suffered damages in an amount to be determined at trial plus the judgment or prejudgment interest which shall continue to accrue until the final adjudication of the matters concerned herein.

## COUNT III
**(Unjust Enrichment)**

44. Sino-Foreign repeats, realleges, and incorporates by reference all of the foregoing paragraphs as if fully set forth herein.

45. At all relevant and material times, Sino-Foreign satisfied its contractual obligations owed to Riverwalk.

46. Sino-Foreign presented eight (8) EB-5 Investors pursuant to the terms of the Agency Agreement, as amended.

47. Riverwalk committed a material breach of the Agency Agreement, as amended, through its failure and refusal to remit Percentage Fee Payments described herein. Riverwalk has been unjustly enriched as a result of the benefits, compensation or diverted funds it received while breaching the contractual payment obligation owed to Sino-Foreign.

48. As a direct and proximate result of Riverwalk's failures, Sino-Foreign has suffered damages in an amount to be determined at trial plus the judgment or prejudgment interest which shall continue to accrue until the final adjudication of the matters concerned herein.

## JURY DEMAND

49. Plaintiffs demand a trial by jury on all issues and claims so triable.

## PRAYERS FOR RELIEF

WHEREFORE, Sino-Foreign respectfully requests that the Court enter the following relief:

A. Enter judgment against Riverwalk on all Counts in the Complaint;

B. Award Sino-Foreign all due and outstanding Percentage Fees accrued through the final adjudication of the Complaint, and damages in an amount to be determined at trial; and

[*Intentionally left blank*]

    C.  Award any such other relief that the Court deems just and proper.

        Respectfully submitted,

        SINO-FOREIGN XINGSHENG GLOBAL INVESTMENT CONSULTING (HK) CO., LTD.

        By its attorneys,

        *John C. La Liberte*
        John C. La Liberte (N.H. Bar No. 6859)
        Sherin and Lodgen LLP
        101 Federal Street
        Boston, MA  02110
        (Tel) 617-646-2000
        (Fax) 617-646-2222
        jclaliberte@sherin.com

Dated:   March 29, 2024